15 minutes per appellant, and 15 minutes to be shaded by appellants. Mr. Ellison for the appellant. Good morning. I'm joined at council table this morning by Donald Visser from the firm of Visser & Associates, who is joining me today, who is also one of the principal brief writers on this case. The United States Supreme Court in Shapiro, which I think controls the outcome of this case, says that letters, or sometimes the word we use is soliciting, as if it's a terrible thing, is constitutionally protected speech when it's done in a truthful and non-abrasive manner, or abusive manner in that respect. What the Vissers did in this instance is that they sent out communications to people who were in need of those legal services. The Supreme Court says you can do that. Really the question, I think, the fight that was really we're having today, because this case is only about what effectively comes down to the 17 individuals who the Vissers had had contact with beforehand, before the preliminary approval order went into place. These are 17 unnamed class members, as opposed to the class members who were named class members? Correct. The named class members, I guess I want to make sure to make that point, that issue is not before this court. That is in case number 24-1072. It's certainly a relevant fact here. It's a detail that I'll discuss in just a second, but the actual aspect of that part of it is part of another case, because it came up through a separate appellate process. Just so we know what's going on around us, briefly, what is the issue there? I wonder why it's not part of this. The issue there is the communications with those specifically individually named... Right, I know what you're talking about. The order of sanction that Judge Maloney put into place, the appeal of his decision of that comes through that case. The reprimand? The reprimand, correct. It's just sort of a scolding, and there's no injunction attached to that. That's correct, but that's coming through a different appeal. This issue today is just the protective order and the 17 individuals. I want to be clear about that, because they've been appealed and are dealt with as part of two separate... The need for a protective order, and the judge felt like there was some overreach and maybe some, even if inadvertent, misrepresentation about where the solicitations were going was part of the judge's calculus in thinking about a protective order. Well, that's one thing I was going to get into a little time I get here this morning, but I want to be clear on that. If that was his thinking, that violated Williams. Well, I mean, look, I understand, just maybe to cut to the chase a little, I understand your point about speech and providing information to particularly unnamed class members, but the court can also kind of maintain order in its courtroom and its proceedings. And Judge Maloney made findings that he thought the VISA firm had told him an untruth in a hearing, and that they had contacted representative parties. So, I mean, why isn't that a basis for what he did here? Because that's combining, I think, two different things that were being dealt with as part of the various aspects of Judge Maloney's order. This aspect today is just the protective order itself. And I want to be clear, and if the court looks to, it's at page ID 4277, Judge Maloney found none of the communications to be misleading, improper, or abusive. I mean, he does seem to have a problem with solicitation by lawyers who are contacting people they shouldn't contact and who are not being truthful with him in court about their actions. And why, I mean, I don't, you know, what authority do you have for the idea that the court has to compartmentalize concerns about whatever, however you want to characterize these concerns I just mentioned on the one hand versus like pure, inaccurate information on the other? So, I guess my first reaction to that would be is that we have to be mindful of the jurisdictional limits of the appeals that are being brought up, because these are coming up different ways to deal with that aspect. We're not going to, I mean, these are highly relevant facts to this case, and I don't think we're going to arbitrarily exclude them based on the fact of the fortuity that you have another appeal that somehow isn't bundled with this one. But, if I could give one step further, that would be my first reaction to the court is to say, well, how do we deal with that? First of all, we need, I mean, essentially that we're dealing with that. As a legal matter, setting aside the jurisdictional stuff, what bar would there be to the court's discretion to consider this holistically in trying to regulate what's happening in, you know, with respect to these proceedings? Because in Williams, the question that the court is trying to address, and if you, because I separate them. I mean, I know the court maybe wants to put them together, and if that's the court's prerogative to do so, it can't. But, addressing the specific issue of the protective order itself with the 17 individuals, if you simply say, I'm going to take this holistic approach and kind of do this, a wide berth of a wider gag order or a wider limitation on the amount of speech, that violates Williams. One of the requirements under Williams is that it has to be the least restrictive means by which to remedy the particular violation that occurred. And, Williams goes on to say is that there has to be a specific showing on the record of the specific abuses or potential abuses that exist in that respect. So, that's why I don't think we can combine findings. I think that part he did. So, why isn't, let's, if we were to look at the injunction, if we just, I mean, that's like a more accurate way to talk about this than protective order. If we were to look at the injunction as modified by our motions panel in this appeal. Yes. Why isn't, why isn't the parameters of that acceptable under what you just described? Because I think that the question that this court, and I did file a 28-J, and this is one of the highlights I'd like to, if I can leave this court with this thought. This is, I think, the big argument today, and the question this court has to answer is, is when does it become impermissible for someone? Setting aside, I want to set aside. Don't forget my question. I know I'm forgetting your question, but setting aside the inadvertent communication with the named representatives. We're talking about in this appeal with the 17 unnamed punitive individuals in that respect. If you, I'm resisting the idea that we just carve that out of this case. But, I mean, what's the answer to my question, and then we can talk about other stuff. So, to answer the question is, is that the problem with this case is that it would not allow, it does not deal with the specific protections that the First Amendment provides for this type of speech. And the question that the court is trying to resolve is, is when would it become impermissible for someone to no longer have communications with potential members of the class? Because the issue that I think is the most important issue that seems to have been overlooked in this, and I think Granger, which is the 28-J supplemental authority that I submitted to the court yesterday, says that this is not a class certification when Judge Moline issued the preliminary approval order. It's not certification. That's the law of the case for this court as well. So, the question becomes, when does it become impermissible for someone to reach out to members of the punitive class to say, hey, you have a legal need or a potential legal need? Under Shapiro, that communication. If I can understand, you're saying you should have been able to reach out to, during the opt-out period, to any absent class member. That is our position. But didn't you say in your response to the motion for a protective order that you weren't doing that, that you didn't want to do it, you represented it to, it says here in your own response that you said that no more letters were sent out, that you weren't making any contact. That didn't seem to really be an issue. You took that off the table. The difference between those two is that the 17 individuals that were talking… Okay, so you're not talking about other absent class members besides for the 17 individuals. Correct. All 17 of them had made contact and had established a relationship with the VISER firm before the preliminary approval order went into effect. And the protective order, as the motions panel of this court changed it, how did that prevent your communication with them in a way that they needed? It still precluded that communication. And it actually precluded communication from anyone… Didn't it say if people initiated communication with you, it was okay? We had to take the position from what the language of Judge Maloney's order is that you could not have any communication. I'm talking about our order. I'm sorry? We revised it. We revised it. Right. You're right. Exactly. It was limited. It is limited in that respect. But the 17 that are still subject to who had made contact but had not been formally retained at that point… Because I think the motions panel… Essentially, everyone's kind of operating in the background of this mistaken idea that Judge Maloney's order that was the preliminary approval order, which has been entered almost a year ago today, actually. We're actually almost one year ago today in that respect. It's somehow a class certification order. And that's some kind of line of demarcation. We understand that point. What? That it's not plenary certification. Well, and that's the important point is because if that's not a class certification order and it's simply the court saying, I might certify in this respect, that means that they're not certified class, there's not class counsel, and those individuals are still in need of legal representation. Because, and I would point this court to Rule 23C24, which says that the notice that goes out has to give notice to the class members if they can appear through their own attorney. And in fact, Judge Maloney's… Right, and under our order, if any of those individuals reached out to you, we're very clear in the order at the end here that anybody who initiates or re-initiates, any of those 17 who re-initiate contact with you during the opt-out period, you're okay to speak to. But that's not what happened with the 17. The 17 at that point, that's where… Because those 17 had received post-certification, had received the type of notice that you told the court wasn't going on. Well, that's what I call the May 2023 communications that came and said, hey, we sent you, we previously sent you a representation, we need you to sign this and come back in that respect. Those individuals that, from our reading of the order, is that those 17 individuals could not be responded to because they had not been retained by the preliminary order date. And that's as modified by our… As modified by… I mean, I'm confused by that, because it says we stay the order, meaning that you're allowed to have contact with people who re-initiate contact with you without having received post-certification. I know it's conditional certification. Communication. Doesn't that allow you to talk to these 17? It might. Yes or no? I would say yes, except the problem is that we were being faulted for sending the May 2023… I understand your grievance with that. I'm just, you know, I'm asking a different question. So you can talk to the 17. If they reached out back to us, but the problem is we had sent stuff out to them and we had heard nothing back from them at that point.  So the problem… Maybe they weren't interested in retaining you. But a number… What was the point of you reaching out to these folks? The letters I saw, you didn't have some new legal theory, did you? I mean, did you have… We did. We did. If that's not in your letter, you just… In your letters, did you identify that there was a pending case, class action? We did not identify there was a pending case. There is no case law at that point that actually required that you need to get that. I mean, you don't have to, sure. Sure. But what was the point, other than you getting clients and financially gaining… It's to help… What was the reason why it was so important that they have you when there was a pending class action for which the class was certified they would have other counsel? Because the class action, in our opinion, is inadequate in terms of the relief that's being provided as a proposed settlement. And I can point this court to, because it's a point I'm very proud of, this case, this court's decision, Freed v. Thomas. If anybody opts out of the class and brings their own case now, they will always do better than what the class is offering as part of the settlement. Well, and that's a significant point here. I get that. So when did you send the… When did these letters go out? The one to the solicitation letters. So the first set of letters, there's different ones. Solicitation letters have been going out for hundreds of years, long before that. The ones that are in dispute went out in January of 2023. That's the first set. This is after Hall v. Meisner. This is after Hall v. Meisner. So after our court is weighed in.  And then also, the second set of letters that Judge Maloney… Again, these were the letters that were accepted by Judge Maloney at the show cause, which is the May 2023, what we call the follow-up letters in that respect. That answers my question. And so to be clear, just one final, my last point is, let's make… I'm asking the court is to make sure when you do look at those communications, because sometimes they get overlapped between those as part of that. Okay. Thank you very much. I don't have any further questions at this time. All right, you'll have your rebuttal. Thank you. We'll hear from the other side. Good morning, Your Honors. Matthew Nelson on behalf of the defendant, Matthew Lee Counties. To go back to the question that Judge Kethledge and Judge Blomkamp, you were asking about the 17 letters. The Vissers could not communicate with those 17 individuals because under the court's order, even as modified by this court, those 17 individuals were among the 63 class members to whom the Vissers sent solicitations after the preliminary approval order. So these are unnamed class members. Correct. Prior to the opt-out period ending. Correct. So, I mean, why do you say they're class members? I mean, they haven't decided yet whether they're class members and they're trying to, at least from their point of view, they're trying to give these folks information about whether to remain a class member. So doesn't that sort of, you know, beg some premises that aren't established here? I don't think so because the issue isn't frankly, it doesn't turn on whether there was class certification or whether these folks were, they were within the scope of the proposed, the class that would be certified if final approval is granted. And therefore, why does that matter about their ability to have, to communicate with these folks? Because the Vissers told the district court that they were not allowed to solicit. I get that point. I'm asking you, let me ask you a different question.  Which is, just as a matter of law, is there any legal impediment to, let's call them third party counsel, you know, counsel other than the punitive class counsel, third party counsel contacting potential unnamed class members before the end of an opt-out period? I mean, is there, there's no... No, not unless the communications are abusive or misleading. Right. And so, is it your position or your co-counsel's position that they were misleading in these letters? I believe it may be my co-counsel's position, but I don't believe it. Okay. Yeah. The counties are not taking a position on that issue. Okay. The counties instead are saying, for the purposes of this court resolving this issue, the question is, did the district court abuse its discretion? And I don't know how the district court can abuse its discretion by saying, you said you weren't doing X. You were doing X, contrary to what you told me, and I'm going to enjoin you from continuing to do the very thing you said you weren't doing. And so that, to me, is the crux of the case. They tried to bob and weave with regard to whether these are solicitations or whether they're just communications, but the fact of the matter is, they told the district court they weren't doing either. And, in fact, if you look at page ID 4242, they specifically say, again, here the visitors have not engaged in any such, that is, post-certification communications. Well, I understand your point. I think that their point is they think that the court's injunctions overbroad, that, you know, I mean, that whatever sort of misdeeds of the visitor firm in Judge Maloney's courtroom, it ought not to empower the court to prevent people from passing along, like, truthful information, I guess, to these unnamed class members. So what's your answer? My answer is, again, if they hadn't told Judge Maloney they weren't doing the thing that they weren't doing, I think they might have an argument. But when you come in and you voluntarily tell a court, we're not doing this, and here there was a specific reason why they did it. The motion came in on an emergency basis, and they said, there's nothing to see here. We're not sending any additional communications. So the judge pushed the hearing off and allowed them to adjourn the hearing from April into May. And it turns out they were doing exactly what they said they weren't doing. When you do that, I think you should expect a district court, a federal court judge to say, no, we're not going to allow you, I'm not going to allow you to do that. You're not, I'm going to prohibit you from doing what you said you weren't doing. And to me, that's fair enough. Can I just make sure, so Judge Catholic was asking this question, and I think I understand the answer. But the preliminary approval of the settlement, and then there'd be conditional certification of class related to that, and you're saying there's no legal significance to that vis-a-vis setting aside the prior time that happened for outside lawyers to contact members of the computer class. I think that's correct, Your Honor. That's, for other counsel who represents the class may have a different perspective, but I believe that that is accurate, that up until the opt-out period, there's at least an argument that counsel are free to continue to make that contact. Now, at this point, the opt-out period is over. So there was just a recent hearing, I think? So the court held a final approval hearing, heard, I think it was six hours of argumentation. He's thorough, Judge Maloney. I've been there with him. It was adjourned. We were going to be in the middle of the trial, and Judge Catholic, you sat in on it. I got adjourned. And he's taken the issue under advisement. We're waiting for an opinion on the final approval. So the class hasn't been certified. Final certification, final settlement approval hearing. I'm not going to say it. Right. That is not on the side of this. I want to clarify, there's conditional certification, but not the final certification. Right, but there was back in March. In March, I'm sorry. March, yes. Were there objectors to the settlement? There were objectors. The same team that is appearing here filed objections and also opted out several hundred people. Okay. Unless the court has further questions, I would ask that the court conclude that the district court did not abuse its discretion with regard to the limited scope of the protective order that is remaining, and affirm it in that regard. All right. Thank you, Mr. Nelson. Mr. Fink. May it please the court. While I agree with much of what Brother Counsel for the defendant said, there's one thing that we do not agree with as class counsel. We do not agree that the preliminary approval, I'm going to give it a double negative here, let me say this.  We believe that preliminary approval does create an attorney-client relationship when, as in this case, the court explicitly, conditionally certified the class. That has to mean something. And we believe, and I can cite— It may have its purposes, but those folks are free to pick another lawyer to opt out altogether. So why is it fair? Why must we treat them as your client, no different than a name playing out for purposes of getting truthful information from other lawyers? Generally. They can, not only can they seek advice from other lawyers, we are obligated to notify them that they can retain other counsel. We are obligated to— But why should it all go through you? I mean, let me just put my cards on the table a little bit here. I mean, you know the Drymax case. It was in re Drymax Pampers. It was a settlement class. We completely blew it up because it benefited no one but the lawyers. They got $2.7 million. The class members got such, basically. And in that case, we talked about the incentives. It's not an indictment of anyone's character, but the incentives— I mean, the unnamed class members are not at the table in negotiations between class counsel and defendants. And there's an incentive to discount their interests in favor of counsel's interests and the defendants' interests. So it would seem to be quite important to allow a truthful flow of information from people who aren't at the table and who don't have those, frankly, bad incentives to allow those third parties to provide useful information to people who have yet to decide whether they want to agree to a settlement. And so it would seem like the First Amendment issue here, so to speak, is an important one. Why would we shut that flow of communication, that mere conditional certification of whatever it is, as opposed to after the opt-out period? We're not suggesting you shut that communication. We're suggesting you control that communication and limit that communication. Why would we limit it, or why would we route it through the very counsel that, you know, no offense, that has incentives that could be adverse to the unnamed class members? The court has inferred something from something I said that I didn't mean to say. I indicated that we had a duty to provide that information to the class. Not that all communications have to come through us. They don't. We, by notice, the notice isn't even sent by us. The notice is sent by the claims administrator. But the notice goes out and says, you have a right to retain other counsel. Other counsel can make an appearance. Let me ask. You say that, and then I've got one thing, and then I'll try to reply. No, you go ahead. I want to interrupt you. The issue here is whether, on a prophylactic basis, a trial court can say, I've seen evidence here of abuse, and I don't want any more abuse. And here, counsel says it's just a detail. It's not just a detail that these attorneys directly contacted seven class reps, seven class representatives. I get that. So I guess the concern or the question I have is let's set aside that particular circumstance in this case. Would you agree that absent those kinds of misdeeds or whatever you want to call them, let's say there's some other firm, let's say it's Powell Miller's firm, just to pick another firm in Michigan. He's clean counsel with them. Okay. Well, maybe I shouldn't use names. Some other firm. The Jones firm.  There's some other firm that thinks this deal is actually not very good, that in a case where the Supreme Court has ruled in favor of the plaintiffs already, that maybe they shouldn't get 64 cents on the dollar at the end of the day. And they want to send letters to the people who are deciding whether to remain in the class. Truthful letters. In your view, is there any legal impediment to them doing that? Well, I believe there is. I don't believe it controls this case. Well, my question is, do you think there is? I'm not talking about this case. I will refer to one case that we cite, but not this proposition.  The legal impediment is that there is an attorney-client relationship that's established once. One case. It's a limited relationship. Arkansas Teacher Retirement System v. State Street Bank and Trust, 512 S. Sub 3rd, 196. We cite it for a different reason than our brief. So it's a district court case. There's no case from this court or the Supreme Court that would say these lawyers cannot have that truthful communication. Is that correct? I have not seen any appellate case that addresses the question of the scope of the limitation on attorney-client communication or communication with what I call representative class members after preliminary approval and before final approval. Now, I will say this. I think it's a dangerous place to go down, a dangerous path to go down, because it creates jeopardy for the class mechanism itself. The class mechanism is set up to allow people to be represented without them having to reach out and retain counsel under very limited circumstances. But doesn't that mean that class counsel in a preliminary certification and a preliminary understanding, like appointing you or your firm as class counsel, you have duties to the class, including to absent class members, right? Correct. But that doesn't mean that every counsel from any other firm can't reach out to an unnamed absent class member, maybe you've never even spoken to, who maybe could use truthful, basic information about what's going on in the case. Why is that prohibited? I understand they can't reach out to your name, class reps, who you already have a retainer agreement with. And I'm not saying that this is this case, but I don't understand what the impediment is there. I believe it's prohibited for practical reasons. Because if it was open season, what would happen is every time a case is preliminarily approved, there would then be legions of lawyers, much like what the Vissers have done here, that come in to try to upset every class action settlement and try to hold the parties hostage. You just said we don't have an appellate precedent that decides this one way or the other. And frankly, short of this case, I haven't heard a peep of this sort of thing in almost 16 years in this job. I mean, what reason is there to think that if we let other lawyers share truthful information with potential unnamed class members, that we're going to have all this, you know, disruption? It gets back again to trying to avoid mischief. I get that, but that's what a good district judge will kind of, you know, regulate. But here, the facts we have before us, the counsel made misrepresentations to the court, which the court recognized as misrepresentations. I get it. The court said there's a risk here of abuse. He didn't say there is abuse. He said there's a risk of abuse. Based on that risk of abuse, he creates a prophylactic order that says you can't reach out to anybody close. I think Judge Blomkatz and I were just talking about kind of a more general question about communications generally in the absence of extraordinary facts like the ones you're describing. We know we have those here. I mean, I guess one other issue about the facts here is, I mean, the letters say they have very serious concerns with the settlement. I mean, is there anything misleading or abusive about the content of the letters?  What's misleading? Well, it depends on which letter we're talking about. They send out letters after preliminary approval without telling the class that there is preliminary approval. You don't have to answer that. Okay. They send out letters after preliminary approval without disclosing the pendency of the wayside case or the preliminary approval. Yeah, I was wondering about that, too. The letters don't mention. We're talking about truthful. I don't know whether it's misleading or not to not mention a current case in which you might be a student class member or you are a part of a conditionally certified class. Those facts are never mentioned in these letters. Right, exactly. We think the letter, we, and this is counsel that indicated we might have a different opinion. We think the letters are desperately misleading because they're saying. On that point? On that point, absolutely. When they say, well, they don't tell, they say, we may be able to help you. They don't tell them that you're already represented by somebody who is helping you and for whom there is a preliminary approval of a settlement. Then these people say, well, what's the settlement terms? But that's not what they did here. Well, but they do say they have serious, well, I mean, they must in a backhanded fashion reference the existence of this litigation because they, don't they say at least in one of the letters. There's more than one letter. Yeah, that they have very serious concerns about the preliminary settlement. They did send a letter saying they had concern about a settlement. They also sent a letter saying we'd like to help you and without disclosing the existence of the settlement. Right, but I mean, I'm virtually certain. Let's say they do have a letter that expresses serious concerns about a settlement. Do you, I mean, that isn't problematic as a general matter. Is that true or do you think they, people can't come in and express concerns about this settlement or any settlement? Well, certainly they can come in and express concerns. But the question is whether they can run a campaign in which they're coming after all of what we perceive to be our clients. They're not your clients yet. That issue's not before the court right now. They're just not your clients yet. Well, they really are. I mean, okay, we disagree and I respect that and I don't wear a robe. Okay. But the law as we've seen it has made reference to preliminary approval to establish a contract. There's that case. There is one other case that also makes reference to it. It's an older case. I just want to cite it for the court and that's the Georgine versus Amchem Products case. Again, a district court case from the Eastern District of Pennsylvania, 160 FRD 478. It makes reference to the fact that during this period that there's an inter-client relationship. I guess, I mean, we've been going over and that's because we've had questions. But I guess my last question is really the heart of the matter is whether other lawyers can come in and express concerns. I mean, settlements are sometimes not good for the unnamed class members. Not only do I understand that, I agree with you. The Oakland County settlement that some of them participated in was a horrifying settlement. The attorneys got all the money and the class got very little. And then they came in and objected and got some money. But the fact is in this case, the question is can a court control the class action that's before it when it has evidence of what appear to be abusive actions? First, the misrepresentation. Second, the issue of the direct representation of our clients. Also, you want to say one other thing? Yeah. They argue about the 17 people they're concerned about. Their concern is that there will be reputational harm to them because the letter approved by the court that was sent to these 17 people said that they can no longer represent those people. And they're saying, well, that's just not true. We can't. The fact is the court had ruled they couldn't communicate with those people. If they can't communicate with them, how could they possibly represent them? Okay. I understand that point. Okay. Mr. Fink, we're kind of way over time. So any other questions? Okay. All right. Thank you for your argument. Okay. The only thing I'd say in conclusion is just that this is an issue of whether the court abused its discretion with the facts that it had before it. And I just don't think that these facts are of any use. All right. Thank you, sir. I have to correct, Brother Counsel, and I'll give the court the sites. There was no communication after the preliminary approval that did not reference the settlement. The case, the docket entry is 280. So in other words, positive form, right? Positive form says they're 15. Since then, all communications after the preliminary thing did reference. Did reference. That's 283-5. That's the communication on there. It says on March 24th. It's 4519. The letters beforehand don't reference. The letters beforehand don't. And I'll give that. They don't mention the case at all. They do not mention the case at all. That's kind of naughty.  Well, but they do mention the case. They don't mention that there's been a settlement that's been approved by the court. Because at that point, there was no case that was approved preliminary. Well, there's no settlement today. There's no nothing. This is in January. As far as we were being aware. But as we're getting into record citations right now. No, actually, I get to ask the question now. Can you show me where in the record you asked to be able to contact absent class members who you had not already, like outside of the 17? Are we really deciding anything about that at all? Did you ask the court that we should be able to do that? Because as I'm reading your representation, and I'll refer you to, this is document 36 in the district court docket. It's like, you're saying we don't want to do this. We didn't do this. We don't want to do this. You're like not asking the court. It seems like you're coming to us and telling us, boy, the court did something really wrong by not letting us do something we never said we wanted to do. What we represented as a trial court in that respect is that we were not going to be sending letters to people we had never communicated with before. That's the difference between the 17. But you said you hadn't communicated with anybody post-preliminary settlement. Judge Maloney was there. Are we going to find that Judge Maloney was clearly erroneous in his understanding of this exchange? Yes, I believe so. We know better than he does about what happened in that courtroom. You tell the court, and I gave you the wrong record number, and I apologize. It's 250 in the district court. You say counsel recognizes that the court certification, preliminary certification, of the wayside class precludes further solicitations. No order is necessary. You're saying like we don't want to do this. We're not doing this. You don't have to do anything because there's at least precludes further solicitations and more asking, hey, come let us represent you. That's the important point I wanted to get across. I actually wanted to raise that right now, is that before the preliminary approval, Mr. Visser's firm was sending out letters to people they had not had any previous contact or any previous relationship with, and they were representing to the court. We will not be doing that any further. The main communications are the 17- You can wrap it up in a sentence. The main communications are for the 17 people that had been sent letters before the preliminary approval process, and this was the follow-up to let them know that there was an approval. We have problems with the approval, and if you want us to represent you, please return the representation agreement. That's very good. All right, well, thank you all for your arguments. This case was well-argued this morning. The case will be submitted.